**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | | |
|---|---|---|
| **LARRY EMBRY,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Civil Action No.: CV-14-RDP-0754-M** |
| | } | |
| **CAROLYN W. WILSON,** | } | |
| **Acting Commissioner of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

**<u>MEMORANDUM OF DECISION</u>**

Plaintiff Larry Embry ("Plaintiff") brings this action, pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claims for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). *See also* 42 U.S.C. §§ 405(g) and 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.      Proceedings Below**

Plaintiff filed applications for a period of disability, DIB, and SSI on October 26, 2010. (Tr. 10, 22). The Social Security Administration initially denied Plaintiff's applications on February 3, 2011. (Tr. 10, 35).  Plaintiff subsequently requested and received a hearing before Administrative Law Judge Michael Hazel ("ALJ") on August 22, 2012. (Tr. 24-31). However, Plaintiff did not attend the hearing. (Tr. 10, 24), and Plaintiff failed to show good cause for his failure to appear. (Tr. 17, 101). In his decision, dated September 24, 2012, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. (Tr. 10-11). Plaintiff sought review

of the ALJ's decision, but the Appeals Council denied Plaintiff's request. (Tr. 1). Accordingly, the ALJ's decision became the final decision of the Commissioner; and therefore is a proper subject of this court's appellate review.

## II. Facts

Plaintiff alleges disability due to mental impairment beginning on January 1, 2007. (Tr. 12, 109, 131). Plaintiff was born on May 12, 1980; thus, he was 26 years old on the alleged onset date. (Tr. 18). He has a 10th grade education. (Tr. 132). Plaintiff alleges he is unable to work because of the following: he stays in his room most of the day and does not go outside often; he avoids seeing people and tends to isolate himself in the house; he does not sleep well and has nightmares; he has no hobbies and rarely watches television; he often stares at the ceiling; and cannot concentrate or pay attention very long. (Tr. 145-152). The following paragraphs provide a chronological summary of Plaintiff's case.

On October 12, 2010, almost four years after his alleged onset date of disability, Plaintiff sought treatment at Gateway Family Counseling for symptoms of Post Traumatic Stress Disorder ("PTSD") and depression. (Tr. 197). At Gateway, Plaintiff recited events from his life that likely caused his PTSD and depression. For instance, Plaintiff claimed that his parents neglected him when he was a child because his father was a deaf mute and his mother was deaf. (Tr. 193). Plaintiff additionally stated that his mother committed suicide by lighting herself on fire when he was 15 years old. (Tr. 193). Plaintiff further claimed that he was present when the doctor took his mother off of life support and that a few of his mother's fingers broke off in his hand as she died. (Tr. 193). Plaintiff then stated that, as a result, he had suffered from PTSD symptoms since high school and that the symptoms had grown worse during the previous five years. (Tr. 193). At Gateway, Daniel Marullo, Ph.D. diagnosed Plaintiff with PTSD and Major Depressive Disorder.

(Tr. 198). Soon after his visit to Gateway, on October 26, 2010, Plaintiff applied for a period of disability, DIB, and SSI. (Tr. 10, 22).

On November 8, 2010, Plaintiff sought treatment at the UAB Hospital Emergency Department for insomnia and right hip pain. (Tr. 199). On December 22, 2010, Plaintiff visited Greg J. Sullivan, M.D., (Tr. 228, 246), who prescribed Plaintiff an assortment of drugs for anxiety, depression, and pain. (Tr. 227). On January 19, 2011, State agency consultative examiner, Catherine Prince, Ph.D., examined Plaintiff and concluded the following: "[Plaintiff] would likely have difficulty carrying out and remembering instruction in a work setting. He would likely have difficulty dealing with work pressures, and responding appropriately to supervision and co-workers. [Plaintiff] would likely have difficulty living independently." (Tr. 205).

On January 24, 2011, State agency psychological consultant, Gloria Roque, Ph.D., examined Plaintiff's medical records and opined that Plaintiff has no more than moderate limitations of his activities of daily living, social functioning, and ability to maintain concentration, persistence, or pace. (Tr. 220). Dr. Roque ultimately concluded that Plaintiff can carry out very short and simple instructions, sustain an ordinary routine without special supervision, and make simple work-related decisions. (Tr. 220).

On January 26, 2011, Plaintiff returned to Dr. Sullivan's office for opiate dependency. (Tr. 236). During this visit, Dr. Sullivan noted that Plaintiff continued to have hip pain but seemed to be doing well otherwise. (Tr. 236). Also, during the visit, Plaintiff stated that his prescription medications were helping his depression and stabilizing his moods. (Tr. 236). The record indicates that Plaintiff returned to Dr. Sullivan's office for appointments in February, April, and July of 2011. (Tr. 246, 244, 242). Additionally, the prescription history found in the

records indicate that Plaintiff regularly filled his prescriptions from January 2011 through April 2012. (Tr. 247-251).

On April 12, 2012, Plaintiff sought treatment at the Brookwood Medical Center and was admitted for mood disorder secondary to substance abuse, PTSD, opiate dependence, and alcohol abuse. (Tr. 252). At Brookwood, Jorge W. Castro, M.D., noted that Plaintiff was prescribed medications for PTSD and depression but Plaintiff has not been able to afford them. (Tr. 252). As a result, Plaintiff was given antidepressants, and his condition improved. (Tr. 252).

On August 22, 2012, the ALJ conducted a video hearing. (Tr. 10). However, Plaintiff failed to attend the hearing, and Plaintiff also failed to respond to a Notice to Show Good Cause for Failure to Appear. As a result, the ALJ found, pursuant to Hallex I-2-4-25D, that Plaintiff constructively waived his right to appear for a hearing. Moreover, the ALJ found that Plaintiff was not disabled.

## III.    Statutory and Regulatory Framework

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, an ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If an ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, an ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, an ALJ must determine whether the claimant's

4

impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, an ALJ may still find disability under the next two steps of the analysis. An ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, an ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If an ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, an ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). At this point, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

## IV.    The ALJ's Decision

In the instant case, the ALJ determined that Plaintiff has not engaged in substantial gainful activity and has a combination of the severe impairments PTSD and Major Depressive Disorder, thus satisfying steps one and two of the analysis. (Tr. 12). The ALJ then found that Plaintiff "does not have an impairment or combination of impairments listed in 20 C.F.R. Part

404, Subpart P, Appendix 1," (Tr. 13), thus failing to satisfy step three of the analysis. Next, the ALJ determined Plaintiff's RFC, specifically holding:

> [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations. [Plaintiff] is limited to simple, routine, and repetitive tasks; requires low stress jobs with only occasional decision making and occasional changes in the work settings; is limited to only occasional interaction with the public so long as the interaction is brief and superficial; is limited to occasional interaction with co-workers so long as no tandem tasks are assigned and the interaction is brief and superficial; and is limited to occasional interaction with supervisors.

(Tr. 15). In determining Plaintiff's RFC, the ALJ evaluated Plaintiff's testimony about his symptoms and concluded: "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the [RFC] assessment." (Tr. 15). The ALJ then articulated various reasons for finding that Plaintiff's statements were not entirely credible, including the fact that Plaintiff's symptoms substantially improve when he takes his medications and the fact that Plaintiff is capable of performing household chores. (Tr. 16). Additionally, the ALJ assigned substantial weight to the medical opinions of Dr. Roque and Dr. Sullivan, while only assigning some weight to the medical opinion of Dr. Prince. (Tr. 17).

The ALJ then moved to step four of the analysis and held that Plaintiff did not have any past relevant work, (Tr. 17), thus implicating step five of the analysis. At step five, the ALJ held that "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Tr. 18). Specifically, during the hearing, the ALJ asked the Vocational Expert what type of jobs a person of Plaintiff's age, education level, and RFC could perform. (Tr. 29). The Vocational Expert testified that Plaintiff could perform jobs such as kitchen helper, cleaner, and solderer. (Tr. 18,

29). As a result, the ALJ ultimately held: "[Plaintiff] has not been under a disability, as defined in the [Act] from [the alleged onset date] to [the date of the ALJ's decision]." (Tr. 19).

### III.    Plaintiff's Argument for Reversal

In his appellate brief, Plaintiff divided his discussion into two specific arguments: (1) "[t]he ALJ failed to properly evaluate the medical evidence of record from examining source, Dr. Prince." (Pl.'s Br. at 7); and (2) "[t]he ALJ failed to properly consider Plaintiff's pain pursuant to the Eleventh Circuit's three part pain standard." (Pl.'s Br. at 10).   The court addresses each argument below.

### IV.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings

must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.      Discussion**

**A.      The ALJ Properly Evaluated the Medical Evidence in Dr. Prince's Report**

Plaintiff argues that the ALJ applied an improper legal standard in evaluating Dr. Prince's report. It is axiomatic that an ALJ has the responsibility of assessing a claimant's RFC, and a claimant's RFC is based on all relevant evidence in the case record, including medial opinions. 20 C.F.R. §§ 404.1546(c), 416.945(a)(1). Here, pursuant to this responsibility, the ALJ considered all of the evidence in the record, including medical opinions, and determined Plaintiff's RFC. Further, an ALJ can give less weight to a medical opinion that is less consistent with the record as a whole. 20 C.F.R. § 404.1527(c)(4). Here, the ALJ incorporated Dr. Prince's opinions "to the extent they are consistent with the remainder of the medical evidence," thus giving the report less weight where it is inconsistent with the record as a whole. Furthermore, the law clearly states that medical opinions from one-time examiners, such as Dr. Prince, are not entitled to controlling weight. *See Stone v. Comm'r of Soc. Sec.*, 544 F.App'x 839, 842 (11th Cir. 2013) ("The ALJ does not have to defer to the opinion of a physician who conducted a single examination, and who was not a treating physician."). *See also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004). In this case, Dr. Prince examined Plaintiff on one occasion; therefore, the ALJ did not err in not giving Dr. Prince's opinion controlling weight.

Plaintiff also cites 20 C.F.R. §§ 404.1519p(b) and 416.919p(b) in support of a secondary argument that this case should be remanded so the ALJ can fully consider Dr. Prince's opinion

(Pl.'s Br. at 10). However, according to these regulations, the ALJ must only request a revised medical opinion if the original one is "inadequate or incomplete." 20 C.F.R. §§ 404.1519p(b), 416.919p(b). Here, Dr. Prince's opinion is neither inadequate nor incomplete.

Although Plaintiff disagrees with the ALJ's decision to give less weight to Dr. Prince's opinion, the ALJ was permitted to do so. The ALJ's findings are supported by substantial evidence and Plaintiff has not shown that the ALJ committed a legal error. Therefore, this court affirms the ALJ's evaluation of Dr. Prince's opinion.

### B.     The ALJ Properly Considered Plaintiff's Pain

Plaintiff argues that the ALJ did not correctly apply the Eleventh Circuit's pain test. The court disagrees.  In a disability case, a claimant's subjective testimony about pain or other disabling symptoms is sufficient to establish disability if the testimony is supported by medical evidence that satisfies the pain test. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). The pain test can be divided into two parts: (1) a threshold inquiry and (2) a credibility determination. The threshold inquiry, sometimes called a two-part test, is the oft-quoted standard articulated in *Holt* and its progeny. To move past the threshold requirement, a claimant must present both (1) evidence of an underlying medical condition and (2) either objective medical evidence that confirms the severity of the alleged pain arising from that condition, or that the objectively determined medical condition is of such a severity that it can be reasonably expected to cause the alleged pain. *Id.*

Once a claimant has met the threshold inquiry, pursuant to the two-part test, the ALJ may conduct a credibility determination. In short, the ALJ may reject a claimant's subjective testimony if it is not found to be credible. *See, e.g., Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002); *Davis v. Astrue*, 346 F.App'x 439, 440 (11th Cir. 2009). Specifically, according

9

to 20 C.F.R. § 404.1529(c)(1), after the claimant meets the threshold by establishing that he has "a medically determinable impairment(s) that could reasonably be expected to produce … symptoms, such as pain," the ALJ may decide not to credit the claimant's subjective claims about pain or other symptoms based on a review of all available evidence. *Id*; *see also Mack v. Comm'r of Soc. Sec.*, 420 F.App'x 881, 883 (11th Cir. 2011).

In this case, the ALJ evaluated Plaintiff's subjective statements according to the proper legal standards. The ALJ enumerated and applied a two-part test that closely resembles the threshold inquiry and credibility determination steps explained above. First, pursuant to the threshold test, the ALJ evaluated whether there was "an underlying medically determinable physical or mental impairment(s)--*i.e.*, an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms." (Tr. 15). This inquiry closely (and sufficiently) resembles the Eleventh Circuit's two-part test as communicated in *Holt*. Although the language used by the ALJ does not exactly match the Eleventh Circuit standard, it similarly entails determining whether there is an underlying impairment and then evaluating whether objective evidence confirms the symptom's severity or that the impairment is of such severity that it can be reasonably expected to give rise to the claimed symptom.  The Eleventh Circuit has noted that "the ALJ does not have to recite the pain standard word for word; rather, the ALJ must make findings that indicate that the standard was applied." *Cooper v. Comm'r of Soc. Sec.*, 521 F.App'x 803, 807 (11th Cir. 2013).  Ultimately, the ALJ held that "[a]fter careful consideration of the evidence, … [Plaintiff's] severe impairments could reasonably be expected to cause some of the alleged symptoms." (Tr. 15). Thus, the ALJ found that Plaintiff met this initial threshold. This court cannot say that the ALJ committed a legal error in applying this test.

Next, the ALJ correctly evaluated Plaintiff's credibility. In his opinion, the ALJ explained the credibility determination step by stating: "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the [ALJ] must make a finding on the credibility of the statements based on a consideration of the entire case record." (Tr. 15). Then, after evaluating all of the evidence, the ALJ held that Plaintiff's statements "are not credible to the extent they are inconsistent with the [RFC]." (Tr. 15). A court must affirm an ALJ's credibility determination if (1) the ALJ articulated reasons for discrediting a claimant's subjective statements, *see Davis*, 346 F.App'x at 440 (citing *Wilson*, 284 F.3d at 1225), and (2) the ALJ's decision to do so is supported by substantial evidence. *Id.* at 441. Thus, this court must analyze two issues: whether the ALJ articulated specific reasons for discrediting Plaintiff's subjective statements and whether the ALJ's decision to not credit Plaintiff's subjective statement is supported by substantial evidence.

As to the first issue, the ALJ did, in fact, articulate reasons for discrediting Plaintiff's subjective testimony. Specifically, the ALJ articulated that: (1) Plaintiff's symptoms substantially improve when he is compliant with medication treatment; (2) Plaintiff is capable of performing household chores, cooking, cleaning, taking out the trash, and going places outside the home; (3) Plaintiff occasionally engages in work activity; (4) Plaintiff's symptoms improve with medication treatments; and (5) Plaintiff's work activity was better before he sought mental treatment. (Tr. 17). Additionally, the ALJ also stated that Plaintiff's decision to miss the hearing and subsequently fail to respond to the Notice to Show Good Cause for Failure to Appear "shows a disregard for the outcome of this case and suggests that he may not be as limited as initially

alleged." (Tr. 17). Thus, the ALJ clearly articulated reasons for not crediting Plaintiff's subjective statements.

As to the second issue, the ALJ's decision not to credit Plaintiff's subjective statements is supported by substantial evidence. To reiterate the standard described above, substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). Further, this court may not "decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)) (internal quotations omitted). The ALJ's decision not to credit Plaintiff's testimony was supported by the five reasons listed above. Those reasons are sufficient to meet the substantial evidence standard because a reasonable person would accept them as adequate to support the conclusion that Plaintiff's subjective statements are not credible to the extent they conflict with the medical evidence and the ALJ's RFC determination which was based upon the record evidence.

## VI.   Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum opinion will be entered.

**DONE** and **ORDERED** this August 4, 2015.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE